## A11A0908. QUARTERMAN v. CULLUM.
(717 SE2d 267)

DOYLE, Judge.

Kenneth B. Quarterman filed a legal malpractice case against John M. Cullum. Quarterman appeals following the grant of sum-

mary judgment to Cullum, alleging multiple enumerations of error. For the reasons that follow, we affirm.

This case arises out of protracted litigation between Quarterman and his brother, Alan Quarterman ("Alan"), regarding the will and estate of their mother, Helen B. Quarterman ("Helen"), following her death in 1990.[1]

> On March 13, 1990, Alan, as the named executor of his mother's estate, filed a petition to probate her last will and testament. On March 23, 1990, [Quarterman] filed a caveat to the petition alleging that his mother did not freely and voluntarily execute the will because 1) she lacked the capacity to make a will, and 2) Alan exercised undue influence over her.[2]

Quarterman retained Cullum to represent him in the probate case in 1996. Shortly thereafter, the probate court entered a pretrial order nunc pro tunc to August 9, 1996, granting an additional 60 days from the date of the order for the parties to conduct discovery and granting Quarterman the opportunity to file a motion to depose Alan "upon [a] showing of good cause." Cullum did not move to depose Alan until after the extended discovery period expired. On October 21, 1996, the probate court granted summary judgment to Alan, and Helen's will was admitted to probate in solemn form. The Supreme Court of Georgia subsequently affirmed the grant of summary judgment to Alan.[3]

On October 8, 1998, Quarterman filed a legal malpractice action against Cullum, alleging that Cullum's failure to timely file a motion to depose Alan resulted in the probate court's failure to consider such evidence in its decision to grant summary judgment to Alan and that such evidence would have created a question of fact and precluded summary judgment. Cullum filed an answer and a counterclaim for unpaid fees in November 1998. With the exception of a certificate of service indicating service of discovery requests to Quarterman by Cullum in April 1999, nothing further was filed in the case until August 13, 2003, when Quarterman filed a motion for a pretrial conference and a pauper's affidavit. On September 2, 2003, Quarterman filed a motion for an order directing the clerk to refund his $99 filing fee and authorizing him to proceed in forma pauperis

---

[1] Some of the relevant facts are set forth in *Quarterman v. Quarterman*, 268 Ga. 807 (493 SE2d 146) (1997).

[2] Id. at 807. Helen's will "divide[d] her property between her sons in equal shares based upon her valuation." Id. at 808 (2).

[3] See id.

with all future filings on the case. The court granted Quarterman's motion to proceed in forma pauperis, but denied his motion for a refund of the filing fee. On May 3, 2006, after the parties failed to appear for docket calendar call, the trial court entered an order dismissing the case, including Cullum's counterclaim, without prejudice.

On November 1, 2006, Quarterman refiled his malpractice claim against Cullum and attached thereto an expert affidavit and a pauper's affidavit. Cullum filed a motion to dismiss the renewal action, arguing that Quarterman's expert affidavit was insufficient, and the trial court denied the motion. In April 2010, Cullum also filed a motion for summary judgment, which the trial court granted following oral argument, finding that Quarterman had failed to demonstrate that Cullum breached the applicable standard of care or that any such breach was the proximate cause of Quarterman's injuries. Quarterman filed a timely notice of appeal on December 16, 2010.

1. Quarterman argues that the trial court erred by denying his motion for a refund of his $99 filing fee paid in his initial legal malpractice action after granting his right to proceed in forma pauperis. Quarterman failed to appeal this ruling in the original case, and we have no jurisdiction to consider it in this appeal of the renewal action. Pretermitting our lack of jurisdiction, however, Quarterman presents no basis for relief.

OCGA § 9-15-2 (a) (1) provides that

> [w]hen any party, plaintiff or defendant . . . is unable to pay any deposit, fee, or other cost which is normally required in the court, if the party shall subscribe an affidavit to the effect that because of his indigence he is unable to pay the costs, the party shall be relieved from paying the costs and his rights shall be the same as if he had paid the costs.

Here, Quarterman paid the $99 filing fee at issue on October 8, 1998. Five years later, he filed a motion to obtain an interlocutory order directing the clerk to refund the filing fee and permitting him to proceed in forma pauperis with all future filings. The trial court granted the motion to proceed in forma pauperis, but denied his motion for a refund of the filing fee. Quarterman has failed to provide any authority to support his contention that a trial court is required to direct the clerk to refund a filing fee paid before the filing of a pauper's affidavit, and we are aware of none.

2. Quarterman contends that the trial court erred by denying his motions to continue the summary judgment oral argument because the trial court previously granted a motion for continuance filed by

Cullum and because it "is standard operating procedure for a trial court to grant a minimum of one motion for a continuance on something as final as a summary judgment hearing." We find no basis for reversal.

> A motion for continuance is addressed to the sound discretion of the trial court, and this [C]ourt will not interfere unless it is clearly shown that the court abused its discretion. The trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require. Broad discretion must be granted trial courts on matters of continuances.[4]

On July 2, 2010, Quarterman filed a motion for a 90-day continuance of the summary judgment oral argument scheduled for July 8, 2010, citing various personal circumstances that had prevented him from preparing for the oral argument; he filed a second motion to continue the oral argument on July 8, 2010. At the time Quarterman filed the motions, the matter had been pending for almost twelve years, and Cullum's summary judgment motion had been pending for over two months. We find Quarterman's arguments on appeal unpersuasive. Given the duration of this litigation and the relatively straightforward nature of the claims, we find no abuse of discretion in the denial of Quarterman's motions to continue the oral argument.[5]

3. Next, Quarterman argues that evidence in the record indicating that he "is a severely disabled elderly litigant ... makes it obligatory on the part of the court to make mention of this fact since it affords to Appellant rights under the Americans With Disabilities Act [('ADA'),][6] which is a federal law." Quarterman does not, however, allege that the trial court in any way abridged or violated his rights under the ADA. Even had he done so, "the methods of enforcement and remedies available to one whose rights have been infringed under the ADA are set forth in 42 USC § 12188 and 42 USC § 2000a-3. Those statutory remedies do not include [reversal of the grant of summary judgment]."[7] And, assuming that a trial court complies with the mandates of the ADA, it is under no obligation to "mention" a litigant's disability.

4. Quarterman argues that the trial court erred by denying his

---

[4] (Punctuation omitted.) *Gipson v. State*, 297 Ga. App. 413, 415 (2) (677 SE2d 431) (2009).

[5] See *Belger v. Exchange Bank*, 148 Ga. App. 275 (251 SE2d 22) (1978).

[6] 42 USC § 12101 et seq.

[7] *Turner v. Masters*, 304 Ga. App. 855, 858 (2) (698 SE2d 346) (2010).

motion to reopen discovery for 90 days, which he filed on July 8, 2010, the day of the oral argument.[8] In the brief filed in support of the motion, Quarterman explained that he was disabled, that the trial court had previously granted Cullum's request to reopen discovery,[9] and that he was trying to retain counsel. Quarterman did not, however, detail any discovery that he needed to obtain.

"A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown."[10] Given the length of time the case had been pending and Quarterman's failure to specify the evidence he hoped to obtain during discovery, we find no abuse of discretion in the trial court's denial of his motion to reopen discovery.[11]

5. Quarterman further contends that the trial court erred by ruling on the summary judgment motion before his appeal of the order denying his motion to reopen discovery had commenced. This enumeration is without merit.

This Court denied Quarterman's application for interlocutory appeal of the order denying his motion to reopen discovery. And, as we held in Division 4, the trial court did not abuse its discretion by denying the motion to reopen discovery.

6. In his final enumeration, Quarterman contends that the trial court erred by granting summary judgment to Cullum. We disagree.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[12] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[13]

To prevail on a legal malpractice claim, a plaintiff must prove that (1) he employed the attorney; (2) the attorney "failed to exercise ordinary care, skill, and diligence"; and (3) this failure was the

---

[8] The record contains an order extending discovery through September 1, 2007; there do not appear to be any further extensions. Thus, discovery apparently expired in 2007, almost three years before Quarterman sought to reopen the discovery period.

[9] We see no such order in the record. Presumably, Quarterman refers to the May 7, 2007 order granting Cullum's request to *extend* discovery until September 1, 2007.

[10] (Punctuation omitted.) *Lawrence v. Direct Mtg. Lenders Corp.*, 254 Ga. App. 672, 673 (1) (563 SE2d 533) (2002).

[11] See id. at 673-674 (1).

[12] See OCGA § 9-11-56 (c).

[13] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

proximate cause of damages to the client.[14]

> To establish proximate cause, [Quarterman] must show that but for [Cullum's] error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. [The defendant] is entitled to summary judgment if he shows that there is an absence of proof adduced by [the plaintiff] on the issue of proximate cause.[15]

Pretermitting whether Cullum was negligent, Quarterman "cannot prevail on his negligence claim because he failed to put forth evidence to create a jury issue on causation."[16]

In support of his claim, Quarterman filed the expert affidavit of Herb Shafer, which stated:

> The failure of John M. Cullum, Esquire[,] to comply with the [probate c]ourt's order, vis-a-vis discovery, has doubtlessly prejudiced the Plaintiff, Kenneth B. Quarterman. Mr. Cullum's non-feasance, i.e., noncompliance with the Court's order, is inexcusable and actionable.

In response, Cullum filed his own affidavit, in which he averred:

> The [p]robate [c]ourt ruled in the pretrial order that discovery would be allowed on a limited basis for sixty days, and that caveator could only depose Alan S. Quarterman upon a showing of good cause. No good cause existed to take the deposition of Alan S. Quarterman between August 9, 1996 and October 25, 2006, nor has there been any since. At all times during my representation of Kenneth Quarterman as his attorney in the case of his caveat to his mother's will I exercised the due and ordinary care, skill, and diligence required of me as an attorney. . . .

As the trial court found, construing Shafer's affidavit in Quarterman's favor,

> there is evidence that . . . Quarterman might have been prejudiced in some manner by the failure to depose Alan. . . . However, . . . Quarterman has not produced any

---

[14] (Punctuation omitted.) *Guerrero v. McDonald*, 302 Ga. App. 164, 166 (1) (690 SE2d 486) (2010).

[15] (Punctuation omitted.) Id.

[16] Id.

evidence regarding topics that would have been addressed during the deposition [or] what testimony . . . Quarterman intended to elicit during the deposition. There is also no evidence or even any arguments [regarding] how the taking of this deposition would have changed the outcome of the underlying case and made it more favorable to . . . Quarterman. In short, there is no evidence that . . . Quarterman's injuries could have been avoided based on . . . Cullum moving the [p]robate [c]ourt and taking the deposition of Alan. . . . Instead, . . . Quarterman's entire causation argument is based on mere speculation and conjecture.

"[M]ere speculation and conjecture[ ] cannot serve as the basis for establishing proximate cause."[17] Accordingly, the trial court properly granted summary judgment to Cullum.

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED SEPTEMBER 8, 2011 —
RECONSIDERATION DENIED OCTOBER 3, 2011 — ■■■■■■

Kenneth B. Quarterman, *pro se.*
*John M. Cullum*, pro se.

---

[17] (Punctuation omitted.) Id. at 167 (1).